UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JANICE NORMAN and
VANESSA SMITH

       Plaintiffs,

v.

BRIGHT HORIZONS FAMILY
SOLUTIONS LLC d/b/a BRIGHT
HORIZONS CHILDRENS' CENTERS,

       Defendant.

_____/

CASE NO. 8:12-cv-01301-EAK-TBM

## PLAINTIFFS' RESPONSE AND SUPPORTING MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW, Plaintiffs, JANICE NORMAN and VANESSA SMITH, by and through their undersigned counsel, and files this, their Response in Opposition to Defendant's, BRIGHT HORIZONS FAMILY SOLUTIONS LLC, d/b/a BRIGHT HORIZONS CHILDRENS' CENTERS (hereinafter referred to as "Bright Horizons" or "Defendant"), Motion for Summary Judgment, and states in support thereof as follows:

## I.    INTRODUCTION

There are two strikes against you:  one for reporting child abuse and two for getting me involved in it.  This comment summarizes the attitude towards Plaintiffs Norman and Smith after reporting suspected child abuse and assisting with the government's investigation into the child abuse allegations. Credibility is the cornerstone of this case.  If Plaintiffs are believed and Defendant's documentation, questionable behavior and harassment are met with skepticism, then Defendant's retaliatory motive should be clear to the jury. As the evidence shows, Plaintiffs

1

engaged in protected activity under both the Florida Private Whistleblower Act and Florida's Child Abuse statute and suffered adverse employment acts as a result. While Defendant has articulated non-retaliatory reasons for its behavior, they are mere pretext. For the reasons set forth more fully below, Plaintiffs request that this honorable Court deny Defendant's Motion for Summary Judgment.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings, discovery materials and affidavits on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed.R.Civ.P.* 56(c). A material fact is one that might affect the outcome of the suit. *Mulhall v. Advance Sec., Inc.*, 19 F.3d 1527, 1529 (11th Cir. 1994). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he inquiry is whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 252. The movant bears the burden to show the Court those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant discharges its burden, the non-moving party must designate specific facts showing that there is a genuine issue for trial. *Id.* at 324. Where conflicts arise between parties' allegations, the "non-moving party's evidence is presumed to be true and all reasonable inference must be drawn in the non-moving party's favor." *Teblum v. Eckerd Corp. of Florida Inc.*, 2005 WL 288932 *2 (M.D. Fla. 2006) (citing *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003).

2

The Middle District of Florida made it clear that "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts and if any inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion." *Brockman v. Avaya, Inc.*, 545 F.Supp.2d 1248, 1252 (M.D. Fla. 2008) (citing *Augusta Iron & Steel Works, Inc. v. Employers Ins. Of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). Furthermore, in ruling on a summary judgment motion, "the court may neither adjudge the credibility of the witnesses nor weigh the evidence." *Brockman*, 545 F.Supp.2d at 1252. Ultimately, "if the determination of the case rests on which competing version of the facts or events is true, the case should be submitted to the trier of fact and the motion for summary judgment denied." *Constable v. Agilysis, Inc.*, 2011 WL 2446605 at *3 (M.D. Fla. June 15, 2011), citing *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir.1987).

## III.   LEGAL ANALYSIS

### A.   Plaintiffs Were Retaliated Against By Defendant In Violation Of The Florida Private Whistleblower Act ("FWA")

The FWA states, in relevant part:

> An employer may not take any retaliatory personnel action against any employee because the employee has:

> (2)   Provided information to, or testified before, any appropriate governmental agency[1], person, or entity conducting an investigation, hearing, or inquiry into an ***alleged violation*** of a law, rule, or regulation by the employer.

> (3)   Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.[2]

---

[1] "Appropriate governmental agency" means any agency of government charged with the enforcement of laws, rules, or regulations governing an activity, policy, or practice of an employer. *Fla. Stat.* §448.101(1).

[2] The Licensing and CPI investigation into the alleged child abuse by Turner was ultimately unfounded. (SDF ¶ 31). Furthermore, Plaintiffs' recognize the Court's ruling in *White v. Purdue*

3

*Fla. Stat.* §§448.102(2)-(3) (quotations omitted) (emphasis added). "Law, rule, or regulation is defined as "any statute or ordinance or any rule or regulation adopted pursuant to any federal, state, or local statute or ordinance applicable to the employer and pertaining to the business." *Fla. Stat.* §448.102(4). As the Supreme Court of Florida explained: subsection 448.102(2) "prohibits retaliation based on an employee's *assistance* with an on-going 'investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer' (assistance claims). Finally, subsection 448.102(3) prohibits the employer from taking retaliatory action on the basis of an employee's *objection* to or refusal to participate in 'any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation' (objection claims)." *Golf Channel v. Jenkins*, 752 So.2d 561, 564 (Fla. 2000).

The FWA is a remedial statute and is to be "construed liberally in favor of granting access to the remedy." *Molenda v. Hoechst Celanese Corp.*, 60 F. Supp. 2d 1294, 1299 (S.D. Fla.

---

*Pharma, Inc.*, that requires the protected activity in a FWA case to concern an actual violation of a rule, law or regulation. 369 F. Supp. 2d 1335 (M.D. Fla. 2005). However, Plaintiffs suggest that this is precisely the case where the more sound "reasonable belief" standard should apply. See *Bunnell v. J.C. Penney Co., Inc.*, 2008 WL 2074000, *4 (S.D. Fla., May 14, 2008) (holding that, under the FWA, "statutorily protected expression exists where a plaintiff can show 'that []he opposed an unlawful employment practice which []he ***reasonably believed*** had occurred.'" (emphasis added)). Here, both Plaintiffs, in good faith, objected to Turner's treatment of children.   Smith objected internally and externally, while Norman objected internally. Whether the government was able to substantiate the claims is immaterial. Our laws mandate that Plaintiffs report suspicions of child abuse and neglect.   Clearly, witnessing someone being physically rough with infants and feeding them food off of the floor is reportable behavior and such reporters should be protected from retaliation in the workplace. If each time that these reports were ultimately unfounded the employer was free to terminate the reporting employee, there would be no point in having a whistleblower law. Indeed, such a standard would have, and perhaps does have, a chilling effect on those who are inclined (and sometimes duty-bound) to report what they reasonably believe is a violation of a law, rule or regulation. Since Plaintiffs made multiple internal complaints (and Smith external) related to child abuse, their whistleblower activities should be protected under the FWA. (SDF ¶¶6,7, 9, 15). For the same reasons outlined in Section III.A., Plaintiffs should survive summary judgment on their claims under Section (3) of the FWA.

1999) *aff'd*, 212 F.3d 600 (11th Cir. 2000)(quoting *Martin County v. Edenfield*, 609 So.2d 27, 29 (Fla.1992)); *Jenkins*, 714 So. 2d at 563(citing *Schultz v. Tampa Electric Co.*, 704 So.2d 605 (Fla. 2d DCA 1997); *Arrow Air*, 645 So.2d 422)).  In fact, courts are "required to construe the whistle blower act liberally because it is a remedial statute." *Schultz v. Tampa Elec. Co.*, 704 So.2d 605, 606 (Fla. 2d DCA 1997).

In a FWA retaliation case involving circumstantial evidence, federal courts apply the same burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). See *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 950–51 (11th Cir.2000) (holding that the burden-shifting framework applied in retaliation claims under the Florida Whistleblower's Act).  Under this familiar approach, Plaintiff must first establish a *prima facie* case of retaliation. *Noboa v. Sygma Network, Inc.*, 2012 WL 1438833 at *4 (M.D. Fla. Apr. 25, 2012).  To establish a *prima facie* case of retaliatory discharge, Plaintiffs must show that they: "(1) engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to the Plaintiffs['] protected activities." *Humphrey v. Sears, Roebuck, and Co.*, 192 F.Supp.2d 1371, 1374 (S.D. Fla. 2002).  If the plaintiff establishes a *prima facie* case, the burden shifts to the Defendants to articulate a legitimate, non-retaliatory reason for the adverse employment action. *Id.* The plaintiff then has the burden of persuasion to show that Defendants' reason was mere pretext for retaliation. *Id.* Based on the liberal construction of the FWA, and for the reasons set forth below, Plaintiffs have carried this burden because there are genuine issues of material facts as to whether the motivating factor behind Defendant's decisions was retaliation.

1.    Plaintiffs Engaged In Protected Activity

A plaintiff can establish that she engaged in statutorily protected activity when she objects or refuses to participate in illegal conduct of the employer, anyone acting within the legitimate scope of their employment, or employees when the employer had ratified that illegal conduct. *See generally, Sussan v. Nova Southeastern University*, 723 So.2d 933, 934 (Fla. 4th DCA 1999).   Indeed, "Florida courts are willing to hold employers liable for FWA violations when one employee complains about the conduct of another employee." *Pinder v. Bahamasair Holdings Ltd., Inc.*, 661 F.Supp.2d 1348, 1352 (S.D. Fla. 2009).  An employee acts within the scope of her employment "if h[er]act is of the kind [s]he is employed to perform, it occurs substantially within the time and space limits of employment and it is activated at least in part by a purpose to serve the master." *Pinder*, 661 F.Supp.2d at 1353, citing and quoting *Nadler v. Mann*, 951 F.2d 301, 305 (11th Cir. 1992) and *Kane Furniture Corp. v. Miranda*, 506 So.2d 1061, 1067 (Fla. 2d DCA 1987).

Plaintiffs engaged in protected activity under section (2) ("assistance claims") of the FWA when they provided information to investigators from the Hillsborough County Child Care Licensing Office ("Licensing") and Hillsborough County Sheriff's Office Child Protective Investigation Division ("CPI"). (SDF ¶¶10, 12, 13).[3]  See *Wigley v. Western Florida Lighting, Inc.*, 2005 WL 3312319 at \*8 (M.D. Fla. Dec. 7, 2005) (holding that the plaintiff's interview with the Department of Labor investigator was protected activity under section (2) of the FWA). Specifically, Plaintiff Norman was interviewed by investigators on April 20 and 21, 2011 and Plaintiff Smith was interviewed on April 25, 2011.  (*Id.*).  Primarily, Plaintiffs were providing assistance with the government's investigation into child abuse/inappropriate discipline by

---

[3] References to Plaintiffs' Statement of Disputed Facts will be cited as "(SDF ¶ _____).

Kristin Turner; however, Norman also provided information to investigators relating to the Citi facility's toilets, drinking water, and sick children. (*Id.*).

Plaintiffs also engaged in protected activity because the information that was provided to the governmental agencies was related to an alleged violation of a law, rule, or regulation by the employer.[4] First, the potential violation related to toilets, water and sick children is clearly an act of the facility and even if it was based upon the acts of employees, providing facilities and water, along with caring for sick children is within the course and scope of their employment. Thus, Norman's assistance with the investigation is protected. Second, the allegations of child abuse against the employee, Kristin Turner, are alleged violations by the employer because Turner was acting within the legitimate scope of her employment and Defendant ratified her behavior. One of the major job functions of a Teacher at Bright Horizons is to "[p]ractice positive discipline techniques in guiding children's behavior." (SDF ¶1). Not surprisingly, Licensing's and CPI's investigation into Turner was related to "inappropriate discipline." (SDF ¶10). In fact, Defendant could have been shut down, fined, or had other penalties levied against it if the allegations against Turner were confirmed. (SDF ¶ 31). In being rough with the children and feeding them food off of the floor, Turner was performing the disciplinary act in which she was employed to perform, the situations occurred within the time and space of her employment with Bright Horizons, and her motivation (at least in part) was to serve her employer. Additionally,

---

[4] Florida has licensing standards for child care facilities. *Fla. Stat.* §402.305. One of those standards relates to child discipline and prohibits discipline that is "severe, humiliating, or frightening" as well as any other form of physical punishment. *Fla. Stat.* §§402.305(12)(a)(1-3). A local licensing agency may levy disciplinary sanctions against a child care facility if the child discipline statute is violated, including fines and licensure revocation. *Fla. Stat.* §§402.310(1)(a)(1-3). Upon receipt of a report of institutional child abuse or neglect, a child protective investigation is immediately initiated. *Fla. Stat.* §39.302(1). Moreover, the appropriate law enforcement agency and licensing agency are contacted to perform a joint investigation. *Fla. Stat.* §39.302(1).

Defendant ratified Turner's rough behavior by completely failing to discipline her and later promoting her. (SDF ¶ 38). Plaintiffs engaged in protected activity under the FWA, but at a minimum, they have created genuine issues of material fact as to whether their activities are protected by the FWA.

2.   Plaintiffs Suffered Several Adverse Employment Actions By Defendant Leading Up To Their Termination

An employer's actions are considered "materially adverse" if they "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). However, petty slights, minor annoyances, and simple lack of good manners" generally do not rise to the level of materially adverse actions. *Id.* In analyzing *Burlington*, the Eleventh Circuit noted that the case "strongly suggests that it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered 'materially adverse.'" *Crawford v. Carroll*, 529 F.3d 961, 974 fn. 13 (11th Cir. 2008). Indeed, the Eleventh Circuit confirmed the "more liberal view of what constitutes an adverse employment action accords an employee protection from a wider range of retaliatory conduct . . ." *Id.* at 974.

Plaintiffs suffered obvious adverse employment actions when they were both terminated from their employment by Defendant. (SDF ¶¶ 26, 34). However, the manner in which Plaintiffs were treated in the build-up to their terminations were far from petty slights or minor annoyances and can be reasonably construed as materially adverse under the *Burlington* standard. The first of the ongoing adverse employment actions was the Employee Conference Memo ("ECM") received by Smith just hours after her initial internal report of child abuse on April 15, 2011. (SDF ¶¶ 6, 8). The ECM indicated that future infractions could lead to termination. (*Id.*) After calling the Florida Abuse Hotline, Smith was removed from her assigned classroom, had her job

description changed, and was required to take a physical and additional trainings. (SDF ¶ 9)  On April 25, 2011, the same day that Smith was interviewed by the government investigators, a co-worker wrote a negative statement about her. (SDF ¶ 13).  In early May 2011, Norman was stripped of her night-receptionist duties and on May 20, 2011, she received an ECM. (SDF ¶¶ 19, 22).  Then, on June 17, 2011, Norman was terminated and Smith received another ECM and Action Plan. (SDF ¶¶ 26, 29).  Ultimately, on June 20, 2011, Smith was placed on administrative leave and later terminated on June 23, 2011. (SDF ¶¶ 32, 34).  In addition to these tangible acts, Plaintiffs testified that they consistently felt harassed and treated differently following their involvement in the child abuse investigations and reported these feelings to the investigators, management and human resources. (SDF ¶¶ 13, 14, 16-19, 21, 24, 28, 33, 36, 37).  These actions, taken in the aggregate, are all materially adverse.  At the very least, Defendant's actions, including the counselings, reprimands and harassment that ultimately led to Plaintiffs' terminations, viewed in their totality would dissuade a reasonable employee from engaging in whistleblowing activities.  Thus, while summary judgment is plainly inappropriate with regard to the terminations being adverse employment actions, it is also inappropriate with regard to the actions leading up to Plaintiffs' terminations.

3.   Plaintiffs' Protected Whistleblower Activities And Terminations Are Causally Connected

The causal link element is broadly construed so that "a plaintiff merely has to prove that the protected activity and the negative employment action are *not completely unrelated*." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) (internal citations omitted) (emphasis added).  In *Pennington*, the Eleventh Circuit stated that the causal link can be satisfied when the employee "has adduced evidence sufficient to create an inference" that the employer's decision was influenced by the employee's engagement in a statutorily protected

action. *Id.* at 1268.   Close temporal proximity between protected conduct and an adverse employment action is generally "sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Williams v. Record Town, Inc.,* 2009 WL 960096 at *3 (M.D. Fla. Apr. 6, 2009), quoting *Brungart v. BellSouth Telecom, Inc.,* 231 F.3d 791, 799 (11th Cir.2000).

The Supreme Court of the United States recognized that causation may be proved by "mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action." *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001) (*per curium*). However, the Court warned that the temporal proximity must be "very close." *Id.* The Eleventh Circuit went further, stating that "[w]e have plainly held that a plaintiff satisfies this element if he provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was a close temporal proximity between this awareness and the adverse employment action." *Farley v. Nationwide Mut. Ins. Co.,* 197 F.3d 1322, 1337 (11th Cir. 1999). Indeed, "[t]he general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Brungart v. BellSouth Telecommunications, Inc.,* 231 F.3d 791, 799 (11th Cir. 2000).

Although there is not a specific line where it is simple to determine whether temporal proximity is "very close," the Eleventh Circuit has given some guidance. See *Freeman,* 2012 WL 5458189 at *5 (holding that the plaintiff established causation when his supervisors knew of his engagement in protected activity, the supervisors criticized the plaintiff, and the plaintiff was terminated a few months, i.e., a "relatively short time," after his initial complaint); *Donellon v. Fruehauf Corp.,* 794 F.2d 598, 602 (11th Cir. 1986) (stating that a month lapse between an

EEOC complaint and discharge is sufficient to satisfy the *prima facie* causation requirement for summary judgment purposes); *Berman v. Orkin Exterminating Co., Inc.*, 160 F.3d 697, 702 (11th Cir. 1998) (noting that plaintiffs may establish causation when transfers occur five weeks and two months after complaints).

Recently, this honorable Court reviewed a defendant's retaliatory actions and specifically discussed a chain of retaliatory acts by the defendant. *Hodgetts v. City of Venice, Fla.*, 794 F.Supp.2d 1265, 1276 (M.D. Fla. 2011). The Court held that a poor evaluation, a performance improvement plan with the threat of additional punishment and the defendant's failure to follow procedure in issuing the negative evaluation on the heels of the plaintiff's engagement in protected activity satisfied the second and third prongs of the plaintiff's *prima facie* case. *Id.* In denying the defendant's Motion for Summary Judgment, the Court noted that there were "several other possible instances" of retaliation on the record. *Id.*

Plaintiffs can show a causal connection through temporal proximity and other evidence indicating that Plaintiffs' protected whistleblower activities and their terminations are not completely unrelated. With regard to temporal proximity, as discussed in the adverse employment action analysis, *supra*, Plaintiffs suffered several materially adverse employment actions after their engagement in protected activities. Starting with the most obvious acts, the terminations, both Plaintiffs were terminated less than two (2) months after assisting the Licensing and CPI investigators. (SDF ¶¶ 26, 32, 34). Moreover, the individuals that participated in the decisions to terminate Plaintiffs were aware of their roles in the government's investigation, with the common links being Whitley and Kozy. (SDF ¶¶ 6, 11, 14, 15, 16, 18, 19, 21, 24, 25, 33). Given the case law, a temporal connection of less than two (2) months is sufficient; however, the connection becomes even more glaring when the other adverse

employment actions are taken into consideration. In particular, from the moment Smith and Norman made internal complaints and subsequently assisted with the government's investigation, they were written-up with threats of termination, harassed, had their assignments changed, had their files peppered with negative statements from co-workers and were ultimately terminated. (SDF ¶¶ 6, 8, 9, 13, 14, 16-19, 21, 22, 24, 26, 28, 29, 32, 33 34, 36, 37).

In addition to the proof of causation via temporal proximity, there is additional evidence that Plaintiffs' protected activity and adverse employment actions are not completely unrelated. The "two strikes" comment by Fuller cannot be understated. (SDF ¶ 18). This admission, along with the fact that Fuller was inexplicably informed of Norman's termination by Whitley calls into question the entire decision-making process and is proof of the connection between Plaintiffs' whistleblower activities and their terminations. (SDF ¶¶ 18, 26). Additionally, Plaintiffs testified that the atmosphere changed and their overall treatment in the workplace worsened once they complained about child abuse and became involved in the investigations. (SDF ¶¶ 14, 16,-19, 28, 37). In fact, Fuller yelled at Smith and told her that she needed to resign. (SDF ¶ 18). Moreover, Whitley told Smith that she could not wait to do her evaluation. (*Id.*). Given the timing of events and the degrading treatment that Plaintiffs received after engaging in protected activity, Plaintiffs have adduced sufficient evidence to create triable questions of fact as to whether Defendant's decisions to terminate Plaintiffs were influenced by their engagement in protected activity. Due to the genuine issues of material fact, the issue of causation is more appropriate for the jury.

4.   Defendants' Stated Reasons For Plaintiffs' Terminations Are Mere Pretext For Retaliation

A plaintiff may successfully show pretext "by directly persuading the court at trial that a [retaliatory] reason more likely motivated the employer or indirectly by showing that the

12

employer's proffered explanation is unworthy of credence. *Hairston v. Gainesville Sun Pub. Co.,* 9 F.3d 913, 921 (11th Cir. 1993), *citing McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804-05, 93 S. Ct. 1817, 1825-26 (1973). A plaintiff's evidence must reveal "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Flagler v. Bridges of America, Inc.,* 2007 WL 1655366 at *7 (M.D. Fla. 2007), *citing Cooper v. Southern Co.,* 390 F.3d 695, 725 (11th Cir. 2004). In showing pretext, "[t]he employee may rely on evidence that he already produced to establish his *prima facie* case."[5] *Martin v. Brevard County Public Schools,* 543 F.3d 1261, 1268 (11th Cir. 2008) (citations omitted). "Ultimately the Court must determine, in view of all the evidence, whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct." *Conner v. Lafarge North America, Inc.,* 343 Fed.Appx. 537, 541, (11th Cir. 2009) (citations and internal quotations omitted).

Plaintiffs may meet his burden and survive summary judgment by "presenting evidence sufficient to demonstrate a genuine issue of material fact as to the truth or falsity of the employer's legitimate non-[retaliatory] reasons." *Freeman v. Perdue Farms, Inc.,* 2012 WL 5458189 at *4 (11th Cir. Nov. 9, 2012) quoting *Evans v. McClain of Georgia, Inc.,* 131 F.3d 957, 965 (11th Cir. 1997). Indeed, "[p]retext may also be established by proof of inconsistent statements or shifting explanations for the adverse employment decision, suggesting that the articulated reasons are recently fabricated or false." *Walker v. St. Joseph's/Candler Health Sys.,*

---

[5] Recently, the Eleventh Circuit analyzed and reaffirmed that contradictions in the defendants' stated reasons for the plaintiff's termination, along with the plaintiff's *prima facie* case, may allow a jury to find that the termination was a result of unlawful retaliation. *Kragor v. Takeda Pharmaceuticals America,* 702 F.3d 1304 (11th Cir. 2012).

*Inc.*, 2013 WL 425180 at *2 (11th Cir. Feb. 4, 2013), citing *Bechtel Constr. Co. v. Sec'y of Labor*, 50 F.3d 926, 935 (11th Cir. 1995) and *Tidwell v. Carter Products*, 135 F.3d 1422, 1428 (11th Cir. 1998).   The Supreme Court explained: "Proof that the defendant's explanation is wholly unworthy of credence is simply one form of circumstantial evidence that is probative of [retaliation], and it may be quite persuasive.   In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a [retaliatory] purpose." *Reeves v. Sanderson Pluming Prod., Inc.*, 530 U.S. 133, 147 (2000). Stated differently, Courts are "not interested in whether the [decision to terminate] [wa]s a correct one, but whether it [wa]s an honest one." *Rojas v. Florida*, 285 F.2d 1339, 1342 (11th Cir. 2002).

Plaintiffs can establish pretext in a number of ways.   First, Fuller's comment that Smith had ***two strikes against her for reporting child abuse*** and getting Fuller involved, creates genuine issues of fact as to Defendant's motive. (SDF ¶ 18).   Second, Plaintiffs can attack Defendant's reasons for their terminations because there are weaknesses, inconsistencies and implausibilities in Defendant's stated reasons for terminating Plaintiffs.   Several of the individuals that participated in the decisions to terminate Plaintiffs admit that many of the alleged work infractions that Defendant relied upon in their reprimands have no documented evidence to support them. (SDF ¶¶ 8, 29, 34, 36).   Furthermore, Defendant did not adhere to its progressive disciplinary policy in terminating Plaintiffs. See *Loyle v. Mantua Mfg. Co.*, 2010 WL 447789 at **10-11 (M.D. Fla. Jan. 25, 2010) (discussing Defendant's failure to follow its progressive disciplinary policy as evidence of pretext).   Defendant, as is common, has certain infractions that are so serious—abuse, neglect, violence, harassment—that would permit a supervisor to skip steps in the progressive disciplinary policy. (SDF ¶ 3).   In Smith's case, Fuller

... 

admitted to skipping a step. (SDF ¶ 34). In fact, the ECM itself states that Smith was only counseled once before for similar conduct, even though no one can describe the prior conduct or point to a document that evidences prior conduct. (*Id.*). With regard to Norman, her termination form cites two (2) prior counsels; however, the incident on May 20, 2011 is unrelated to the reason for Norman's termination. (SDF ¶¶ 22, 26). Lastly, the individuals that participated in the decisions to terminate Plaintiffs offered inconsistent and somewhat vague reasons as to the reasons for termination. (SDF ¶¶ 26, 34). For example, Norman's termination form indicates that she was terminated due to a misunderstanding with co-workers. (SDF ¶ 26). However, Kozy testified that Norman was terminated because she shared confidential information with parents and Horner understood that Norman was fired due to an issue with her schedule being changed. (*Id.*).

Additionally, there was bias and inconsistent treatment toward Plaintiffs in the weeks leading up to their terminations, along with suspicious timing. See *Smith v. Pefanis*, 652 F.Supp.2d 1308, 1334 (N.D. Ga. 2009). (noting that "the combination of suspicious timing with other significant evidence of prextext, can be sufficient to survive summary judgment"). Starting with the accused, Kristin Turner, bias tainted Defendant's decision-making process related to Plaintiffs. Turner's mother works in management at the same Citi (a client of Defendant) location where Turner is employed. (SDF ¶¶ 3, 5, 6). Moreover, Turner is friends with a supervisor at the Citi location, Susan Saunders, so it comes as no surprise that Saunders tried to shift the blame to Smith when the issue of child abuse came up. (SDF ¶ 6-8, 14). Despite statements from other employees about Turner's rough treatment[6] and tone of voice—along with parents removing their children from her class—Turner was never disciplined and was later

---

[6] Comparatively, Smith was formally reprimanded for being too far away from the children in her room. (SDF ¶ 8).

15

promoted. (SDF ¶¶ 10, 15, 38). With regard to Norman, the employee, Krissy Hodel, that was the focus of the final complaint about Norman was known for complaining about her co-workers. (SDF ¶¶ 26). In fact, Hodel, who is friends with Director Brenda Hayes, previously said "I don't give a shit" in front of children and co-workers, but was merely spoken to by Hayes. (*Id.*).

In addition to the suspicious timing analyzed in the discussion related to causal connection, there are events that took place in the weeks and days leading up to Plaintiffs' terminations that are questionable. On the same day that Smith made her initial complaint of child abuse, she was written-up. (SDF ¶¶ 6, 8). Then, on the same day that Smith was interviewed by the government investigators, a co-worker wrote a negative statement about her. (SDF ¶ 13). Within a week of Norman sending a written complaint of harassment and being questioned by her supervisor about Turner, she was given an ECM. (SDF ¶¶ 19-22). In the days prior to Smith's termination, eight (8) different employees supplied Defendant with statements about Smith on a range of topics. (SDF ¶ 36). On June 17, 2011, Licensing received another complaint about the Citi Family Center. (SDF ¶ 25). That same day, Norman was terminated and Smith was given an ECM and placed on an Action Plan. (SDF ¶¶ 26, 29). Interestingly, when Norman was terminated, Whitley contacted Smith's supervisor (Fuller) to inform her of the termination. (SDF ¶¶ 26). Finally, on June 19, 2011, the day before Smith was placed on administrative leave, the government concluded its investigation into child abuse at Defendant's Citi location. (SDF ¶¶ 31, 32).

Viewing the totality of the circumstances, Defendant's reasons for Plaintiffs' terminations are mere pretext. Combining Plaintiffs' *prima facie* case with the overwhelming evidence of pretext would permit a reasonable jury to conclude that Defendant's proffered reasons for termination are not what motivated its conduct and that the decisions to terminate

16

Plaintiffs were influenced by their protected whistleblower activities. Thus, summary judgment is not appropriate on Plaintiffs' retaliation claims under the Florida Private Whistleblower Act.

**B.    Plaintiffs Were Retaliated Against In Violation Of Florida's Child Abuse Statute**

In Chapter 39, *Florida Statutes*, the term "institutional child abuse or neglect" is defined as "situations of known or suspected child abuse or neglect in which the person allegedly perpetrating the child abuse or neglect is an employee of a . . . private day care center." *Fla. Stat.* §39.01(33).   Any person who knows or has "reasonable cause to suspect" that a child is being abused is mandated to call Florida's central abuse hotline and report the abuse. *Fla. Stat.* §§39.201(1)(a)-(2)(a).   Reports related to "known or suspected institutional child abuse or neglect" are made and received in the same manner as any other report. *Fla. Stat.* §39.201(2)(f). Importantly, Chapter 39.203(2), *Florida Statutes* states, in relevant part:

> (a) No . . . employee of a facility serving children may be subjected to reprisal or discharge because of . . . her actions in reporting abuse, abandonment, or neglect pursuant to the requirements of this section.
>
> (b) Any person making a report under this section shall have a civil cause of action for appropriate compensatory and punitive damages against any person who causes detrimental changes in the employment status of such reporting party by reason of his or her making such report. Any detrimental change made in the residency or employment status of such person, including, but not limited to, discharge, termination, demotion, transfer, or reduction in pay or benefits or work privileges, or negative evaluations within a prescribed period of time shall establish a ***rebuttable presumption*** that such action was retaliatory.

*Fla. Stat.* §39.203(2)(a)-(b) (emphasis added).   Since a rebuttable presumption is already created, Plaintiffs should not have to establish a *prima facie* case under Chapter 39.203. See *Johnson v. City of Tampa*, 2013 WL 1912790 at *10 (M.D. Fla. May 9, 2013) (confirming that, under the

*McDonnell Douglas* framework, the establishment of a *prima facie* case creates a rebuttable presumption that the employer acted illegally). Even if Plaintiffs were required to establish a *prima facie* case using the *McDonnell Douglas* framework, they are able to do so for the same reasons discussed in section III.A., *supra*.

     1.    <u>Plaintiffs Engaged In Protected Activity Under Florida's Child Abuse Statute And Suffered Detrimental Changes In Their Employment Status</u>

Plaintiff Smith contacted Florida's central child abuse hotline and was terminated approximately two (2) months later after being harassed, receiving reprimands, being placed on an Action Plan and Administrative Leave a few days later. (SDF ¶¶ 6, 8, 9, 13, 29, 32, 34). Clearly, Smith made a report and suffered a detrimental change in her employment thereafter. The question then becomes whether the statute protects those employees that are interviewed as part of an investigation into a report of suspected child abuse. Public policy dictates that they should. It would be incongruent for the reporter to have protection against retaliation and the participants to be left unprotected. In addition to policy reasons, the statute indicates a legislative intent to protect those who assist with an investigation. Subsection 39.203(1)(a) reads: "Any person, official, or institution *participating in good faith* in any act authorized or required by this chapter, or reporting in good faith any instance of child abuse, abandonment, or neglect to the department or any law enforcement agency, shall be immune from any civil or criminal liability which might otherwise result by reason of such action." *Fla. Stat.* §39.203(1)(a) (emphasis added). It is sensible that the legislature would immunize both reporters and those who participate in a child abuse investigation. It would logically follow that the same intention was to protect both reporters and participants from retaliation. Thus, Plaintiffs engaged in protected activity by participating in the governmental investigation into child abuse and

subsequently suffered detrimental changes in their employment.   Since the rebuttable presumption is in place, this issue is proper for jury submission.

   2.   Defendant's Stated Reasons For Plaintiffs' Termination Are Mere Pretext For Retaliation[7]

Based on the contradictions, inconsistencies, incoherencies, implausibilities discussed in Section III.A.4, *supra* there are genuine issues of material fact as to Defendant's reasons for Plaintiffs' terminations and whether they are mere pretext for retaliation.   Therefore, Plaintiffs have raised genuine issues of material fact as to their claims under Florida's child abuse statute.

## IV.   CONCLUSION

WHEREFORE, Plaintiffs, VANESSA SMITH and JANICE NORMAN, respectfully request that this honorable Court deny Defendant's Motion for Summary Judgment.   Plaintiffs have presented evidence sufficient to create a genuine issue of material fact as to whether Defendant retaliated against them in violation of the Florida Private Whistleblower's Act. Additionally, Plaintiffs have presented evidence sufficient to create a genuine issue of material fact as to whether Defendant retaliated against them in violation of Chapter 39.203, Florida Statutes.

[THIS SPACE INTENTIONALLY LEFT BLANK]

---

[7] See Section III.A.4, *supra*, for a full recitation of the law related to pretext.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of June, 2013, a true and correct copy of the foregoing has been furnished via electronic mail to:   Carlos J. Burruezo, Esquire and Jason Leo, Esquire at LITTLER MENDELSON, P.C., 111 N. Magnolia Avenue, Suite 1250, Orlando, FL 32801-2366.

**FLORIN ROEBIG, P.A.**

*/s/ Gregory A. Owens, Esquire*
**WOLFGANG M. FLORIN, ESQUIRE**
Florida Bar No.: 907804
Primary:        WMF@FlorinRoebig.com
Secondary:    LaborService@FlorinRoebig.com;
                       glw@FlorinRoebig.com
**GREGORY A. OWENS, ESQUIRE**
Florida Bar No.: 0051366
Primary:        Greg@FlorinRoebig.com
Secondary:    LaborService@FlorinRoebig.com;
                       glw@FlorinRoebig.com
777 Alderman Road
Palm Harbor, Florida 34683
(727) 786-5000
(727) 772-9833 facsimile
Attorneys for Plaintiff