UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JANICE NORMAN and VANESSA
SMITH,

      Plaintiffs,

vs.                           CASE NO. 8:12-CV-1301-T-17TBM

BRIGHT HORIZONS FAMILY
SOLUTIONS, LLC,

      Defendant.
_____/

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

      This matter comes before the Court pursuant to Defendant BRIGHT HORIZONS

FAMILY SOLUTIONS, LLC, d/b/a BRIGHT HORIZONS CHILDREN'S CENTERS'

("Bright Horizons") Motion for Summary Judgment and Incorporated Memorandum of Law

(Doc. # 21), filed on May 31, 2013, Plaintiffs', JANICE NORMAN ("Norman") and

VANESSA SMITH ("Smith"), Response in Opposition (Doc. # 32), filed on June 28, 2013,

and Bright Horizons' Reply Brief (Doc. # 50), filed on January 8, 2014.  For the reasons

set forth below, the Defendant's Motion is **GRANTED** in part and **DENIED** in part.

### BACKGROUND

      Bright Horizons is a provider of early education, preschools, employer-sponsored

child care, back-up care, educational advisory services, and other work and life solutions.

(Doc. # 22, ¶1; Doc. # 27).  Bright Horizons hired Ms. Janice Norman on April 17, 2008;

Norman worked as an associate teacher at Bright Horizons' Citi Center location.  Id. at

¶3. Norman was responsible for providing a safe and nurturing environment for children

between the ages of three and five, and also assisting in the design and implementation of curriculum, maintaining positive relationships with her colleagues and the students' parents, and assisting the teachers. Id. at ¶4. On August 18, 2010, Norman "had a verbal outburst with the Assistant Director Ms. Debra Neverson when she asked what was taking her so long to get to the infant room," which Norman signed and acknowledged August 24, 2010. Id. at ¶39. In April 2011, Norman acknowledged an incident in which she may have exuded unprofessional behavior toward a co-worker. (Doc. # 25, pp. 57–58).

Bright Horizons hired Ms. Vanessa Smith in January 2011; Smith worked as a teacher at Bright Horizons' Citi Center location. (Doc. # 22, ¶2; Doc. # 27). Smith was responsible for supervising infant children less than two years of age, ensuring a loving, learning environment, designing and implementing curriculum, and maintaining positive relationships with the children, parents, guardians, and co-workers in a professional manner. Id. In the months after she started with Bright Horizons, parents accused Smith of leaving children unattended on at least three separate occasions—February 28, 2011, March 31, 2011, and April 13, 2011. Id. at ¶10. Smith received counseling April 15, 2011, and while she disputed the claims, Smith acknowledged another incident could result in further counseling, reprimand, or termination. Id. at ¶¶10–11. That same day, Smith reported her co-worker, Ms. Kristin Turner, for alleged child abuse—Smith alleged Ms. Turner inappropriately slung children onto their napping cots, shoved the children with her foot, and used profane language in the children's presence. Id. at ¶12. Ms. Turner's mother is a manager at Citi, where the Bright Horizons facility is located. Director Ms. Linda Horner received these complaints and told Smith the complaints would be addressed. Id. These complaints were solely verbal. See id. at ¶¶10–12. Norman

reported similar instances of Ms. Turner's alleged child abuse at approximately the same time as Smith, and program director Ms. Susan Saunders assured Norman she would look into the matter and take care of it. Id. at ¶41.

Three days passed and Smith did not learn of any inquiry from Bright Horizons concerning her complaints, and on April 18, 2011, Smith reported the same complaints to the Florida Department of Children and Families ("DCF"); however, aside from Smith's sworn deposition testimony, there is no physical evidence to corroborate Ms. Turner's alleged child abuse. Id. at ¶13–14. From April 18, 2011 through April 20, 2011, DCF received complaints concerning Bright Horizons' failure to isolate sick children, inaccessible drinking water on the playground, malfunctioning toilets, and inappropriate discipline. Id. at ¶15. DCF conducted an investigation into Ms. Turner's alleged violations, as well as the failure to isolate sick children and inaccessible drinking water, determined the complaints were without merit, and closed the case. Id. at ¶16. The Hillsborough County Child Care Licensing Office ("Hillsborough CCLO") also investigated these same complaints, and found them to be unprovable. Id. at ¶17.

During the course of the government agencies' investigations, both Smith and Norman met with investigators from the agencies and provided information related to Ms. Turner's alleged child abuse at the facility. Id. at ¶42; Doc. # 42, p. 124. Shortly after providing the testimony, Smith submitted a transfer request to Ms. Horner, wherein she stated she was uncomfortable at the current facility due to the investigations. (Doc. # 22, ¶20; Doc. # 27). On May 9, 2011, Smith started at the Bright Horizons Moffitt Center under the supervision of Ms. Marilyn Fuller, who informed Smith she had two strikes against her; one for reporting the child abuse, and one for placing Ms. Fuller in the middle

of the investigation. Id. at ¶24. Smith reported this to Ms. Thearla Kozy Bright Horizons' human resources division, a meeting was held, and Smith was encouraged to act friendlier and as a team. Id.

On May 20, 2011, after Norman provided information to the investigators, she received a written reprimand for sharing confidential information related to the child abuse investigations that was inappropriate, inflammatory, and disruptive in nature, and in direct violation of Bright Horizons' policies. Id. at ¶45. In early June 2011, Norman acknowledged a verbal confrontation with fellow employees. (Doc. # 25, p. 95, ¶¶16–20). On June 17, 2011, Bright Horizons terminated Norman, citing her unprofessional conduct and violations of Bright Horizons' confidentiality policies. (Doc. # 22, ¶49; Doc. # 25, pp. 114–115).

On June 14, 2011, Smith was involved in an altercation with a parent over Smith's alleged mistreatment of a child in the parent's presence. Id. at ¶26; Doc. # 31, ¶23. On June 15, 2011, Smith filed a report with the appropriate local police agency, wherein she claimed the parent battered her. Id. at ¶27. On June 17, 2011, Bright Horizons placed Smith on a disciplinary plan for her allegedly subpar job performance for the period following her reports of the alleged child abuse in April, and on June 20, 2011, Bright Horizons placed Smith on leave, investigated the incident, and ultimately decided in favor of the parent. (Doc. # 31). On June 23, 2011, Bright Horizons terminated Smith, citing Smith's failure to share the alleged altercation with her supervisor, as well as unacceptable, unprofessional, and insensitive behavior toward parents of children at the facility. (Doc. # 24, exhibit 18).

On May 1, 2012, Plaintiffs Norman and Smith filed their two-count Complaint in the Circuit Court of the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida, (Doc. # 2), which Defendant timely removed to this Court. (Doc. # 1). The two-count Complaint alleges Bright Horizons retaliated against Plaintiffs Norman and Smith in violation of Florida's Private Whistleblower Act ("FWA") and Florida's Child Abuse Reporting Statutes ("CARS"). (Doc. # 2). Specifically, Plaintiffs Norman and Smith claim Bright Horizons subjected the Plaintiffs to adverse work conditions, demotions, and eventual termination due to Plaintiffs' reports of child abuse to Florida investigating agencies. Id. On May 31, 2013, Bright Horizons moved for summary judgment, Plaintiffs Norman and Smith responded June 28, 2013, and Bright Horizons filed its reply brief January 8, 2014.

## LEGAL STANDARD

Summary judgment is appropriate if the pleadings, discovery, disclosure materials on file, and any affidavits demonstrate there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

> The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The appropriate substantive law will guide the determination of which facts are material and which facts are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th

Cir. 1993). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Anderson, 477 U.S. at 248. However, if the evidence is merely colorable…or is not significantly probative…summary judgment may be granted. Id. at 249–250.

## DISCUSSION

### 1. FWA Retaliation

When a party moves for summary judgment for claims brought under the FWA, courts apply the framework from Title VII retaliation claims. Sierminski v. Transouth Fin. Corp., 216 F.3d 945 (11th Cir. 2000). This framework first determines whether the plaintiff can establish a prima facie case of retaliation. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). To establish a prima facie case of retaliation under the FWA, the employee must establish all three of the following elements: 1) the employee engaged in statutorily protected activity; 2) the employee suffered a materially adverse action that would discourage a reasonable employee from engaging in the statutorily protected activity; and 3) a causal relationship exists between the first two elements.[1] Rutledge v. Suntrust Bank, 262 Fed.Appx. 956, 957–958 (11th Cir. 2008). If the employee establishes her prima facie case, the burden shifts to the employer to provide a legitimate reason for the materially adverse action. Id. at 958. In the event the defendant provides

---

[1] In its reply brief, Bright Horizons encourages the Court to adopt the "but-for" analysis the Supreme Court announced in University of Texas Southwestern Medical Center v. Nassar. 133 S.Ct. 2517 (2013). After careful consideration and review, the Supreme Court applied the "but-for" analysis to Title VII retaliation claims, and most importantly did so based on the strict construction of the federal statutes under which Nassar sought relief. The case at bar proceeds under separate and distinct state statutes; these statutes are written in a much broader manner than Title VII retaliation, and the Supreme Court opined the more strict "but-for" rule might not apply to broadly-written statutes. Therefore, this Court declines to extend the "but-for" analysis to Florida Whistleblower claims. See Nassar, 133 S.Ct. at 2530 ("If Title VII had likewise been phrased in broad and general terms, respondent's argument might have more force. But that is not how Title VII was written, which makes it incorrect to infer that Congress meant anything other than what the text does say on the subject of retaliation.").

a legitimate reason for the materially adverse action, the burden returns to the employee to prove the reason was pre-textual. Id.

### A. Smith and Norman Have Established Prima Facie Evidence of Protected Activity under Florida Statute § 448.102(2).

The FWA protects an employee from retaliation under three different scenarios. The first protected activity is when an employee "[d]isclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation." Fla. Stat. § 448.102(1) (emphasis added). The second protected activity is when an employee "[p]rovided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of law, rule, or regulation by the employer." Fla. Stat. § 448.102(2). The third and final protected activity is when an employee "[o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." Fla. Stat. § 448.102(3).

It is uncontested neither Smith nor Norman may avail themselves under the first type of protected activity—the alleged complaints were verbal and there is no evidence to satisfy the written requirement of Florida Statute § 448.102(1). Therefore, based on a record devoid of any written disclosures or threats to disclose violations satisfying the written requirement, Plaintiffs have failed to establish prima facie evidence of same, and Bright Horizons is entitled to summary judgment under that section.

Plaintiff urges this Court to interpret Florida Statute § 448.102(2) and find as a matter of law that reporting a fellow employee's alleged violation of law, rule, or regulation committed in the course and scope of her employment imputes to the employer. (Doc. #

30, p. 6).  The Court agrees.  The FWA defines an employee as "a person who performs services for and under the control and direction of an employer for wages or other remuneration."  Fla. Stat. § 448.101(2) (emphasis added).  The FWA then defines an employer as "any private individual, firm, partnership, institution, corporation, or association that employs ten or more persons."  Fla. Stat. § 448.101(3).  FWA Retaliation cases often involve some level of employee-related violations of law, rule, or regulation.  See Sierminski, 216 F.3d at 950 (wherein the plaintiff-employee complained of a fellow employee's notary violations) (summary judgment granted on other grounds); see also Stone v. Geico General Ins. Co., 279 Fed.Appx. 821, 822 (11th Cir. 2008) (wherein the plaintiff-employee complained of supervisor's scrutinizing elder candidates in violation of Age Discrimination in Employment Act) (summary judgment granted on other grounds).

Further, Pinder v. Bahamasair Holdings Ltd., Inc. and Sussan v. Nova Southeastern University are both illustrative.  In Pinder, the plaintiff-employee indeed complained of the conduct of a fellow employee to the defendant-employer.  661 F.Supp.2d 1348, 1349 (S.D. Fla. 2009).  The plaintiff-employee alleged the fellow employee allowed a passenger to check in using another individual's name and passport number. 661 F.Supp.2d at 1351.  At summary judgment, while both parties conceded the protected activity could only fall within the ambit of 448.102(3), and that 448.102(1) and 448.102(2) did not apply, the court still determined the merit of the case based on the construction of Florida Statute § 448.102, et. seq. Specifically, the court determined that an employee's activity of reporting a fellow employee could fall within protected activity under the FWA. Id. at 1351.  The court further found the complaints against the employee

8

fell within the FWA's meaning of "employer," and ruled as a matter of law the plaintiff-employee had established a prima facie case.

As with Pinder, the court in Sussan also based its ruling on the interpretation of the term "employer" and Florida Statute 448.102(3), but not Florida Statute 448.102(2), and still found the activity of reporting an employee's violation of a law, rule, or regulation is protected under the FWA.  723 So.2d 933, 934 (Fla. 4th DCA 1999).  Moreover, in McIntyre v. Delhaize American, Inc., the Eleventh Circuit Court of Appeals reviewed the reasoning from Sussan, and opined that when a plaintiff-employee reports another employee for the violation of a law, rule, or regulation, the defendant-employer could support or ratify the behavior, which would bring the plaintiff-employee's otherwise ineligible complaint within protected activity under the FWA.  403 Fed.Appx. 448, 451 (11th Cir. 2010).

Therefore, with respect to Plaintiffs' complaints against Ms. Turner, the critical question before the Court is whether Plaintiffs have established prima facie evidence that Bright Horizons either supported or ratified the behavior of which Plaintiffs complained. This Court finds there is sufficient evidence in the record upon which a jury could find Bright Horizons ratified the behavior through inaction.  Smith complained of and provided information to DCF and Hillsborough CCLO concerning Ms. Turner's rough treatment of children and serving dirty and unsanitary food.   Norman complained of these same actions and shared her observations with representatives from the government agencies during the respective investigations.  After both Smith and Norman reported Ms. Turner's behavior on or about April 15, 2011, there is no evidence that Bright Horizons took any corrective, disciplinary, or investigatory action with respect to Ms. Turner's behavior

before either government agency undertook an investigation, despite Ms. Horner's representation that she would "take care of" the behavior.   Rather, the record demonstrates Ms. Linda Horner—the director of Bright Horizons from 1999 to 2012—did not initiate a "self-report" or any review of the alleged violations before the government agencies began their respective investigations, (Doc. # 37, p. 33, l. 9–p. 34, l. 6), and Ms. Jennifer Whitley—the employee ultimately responsible for conducting the internal review—did not learn of the complaints before the government agencies arrived at the doorstep of Bright Horizons to conduct their investigations on or about April 20, 2011. (Doc. # 35, p. 5, l. 18–p. 6, 13).   Based on the testimony of both Ms. Horner and Ms. Whitley, this approximate five-day failure to investigate the alleged violations presents prima facie evidence upon which a jury could find Bright Horizons ratified Ms. Turner's alleged violations.   Therefore, Smith's and Norman's activities were protected under Florida Statute § 448.102(2), and summary judgment is inappropriate.

While Plaintiffs established a prima facie case under Florida Statute § 448.102(2), they fall short of establishing a prima facie case under Florida Statute § 448.102(3).   The FWA protects the employee who objects or refuses to participate in "any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation;" however this section removes the word "alleged," and as plainly read, requires plaintiff actually prove the violation.   See In re Standard Jury Instructions in Civil Cases—Report No. 2011-01, 95 So.3d 106 (Fla. 2012) (noting that all three federal district courts require proof of an actual violation of law, rule, or regulation) (citing White v. Purdue Pharma, Inc., 369 F.Supp.2d 1335, 1336 (M.D. Fla. 2005), Paulet v. Farlie, Turner & Co., LLC, 2010 WL 2232662, at *2 (S.D. Fla. June 2, 2010), and Smith v. Psychiatric Solutions, Inc., 2009

WL 903624, at *7 (N.D. Fla. March 31, 2009)).  This Court will not interrupt the well-reasoned approach applied in these cases assessing the plain language of the statute, and adopts this actual-proof requirement under Florida Statute § 448.102(3).

In the light most favorable to Plaintiffs, the Court cannot find Plaintiffs have carried this burden.  Two separate government agencies thoroughly investigated Ms. Turner's alleged child abuse and found them either unprovable or without merit.  Indeed, the facility could have been shuttered if the allegations came to fruition, and there is no doubt the government agencies tasked with the responsibility of investigating child abuse exercise this responsibility thoroughly and with great care, as evidenced by the numerous investigatory reports provided in the record.  Beyond their own statements, Plaintiffs do not offer corroborating proof, and as the Florida Legislature chose to remove the term "alleged" from section 448.102(3), the legislative intent is clear that a mere allegation cannot suffice.  Therefore, based on the record devoid of any corroborating evidence beyond Plaintiffs' statements, Plaintiffs have failed to establish prima facie evidence of an actual violation of law, rule, or regulation under Florida Statute § 448.102(3), and Bright Horizons is entitled to summary judgment under that section.

### B. Smith and Norman Suffered Materially Adverse Employment Actions

An employer's actions are considered "materially adverse" if they "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).  Defendant does not dispute Plaintiffs' terminations could qualify as adverse employment actions under the FWA, but rather assets the terminations were not causally related to the protected activities.  (Doc. # 21, p. 9, stating "the only adverse action suffered by the

Plaintiffs was the termination of their employment"). For the purposes of summary judgment, this Court finds the terminations were materially adverse employment actions, and, thus, Plaintiffs satisfied the second prong of their respective prima facie cases under the FWA. The terminations satisfy this prong, and the Court declines to analyze the remaining alleged materially adverse employment actions.

### C. Both Smith's and Norman's Terminations Are Causally Related to their Respective Protected Activity

The final element which a plaintiff-employee must establish in her prima facie case is a causal relationship between the adverse employment actions and the protected activity. Rutledge, 262 Fed.Appx. 956, 957–958. A causal connection can be shown where there is a "close temporal proximity" between the employer learning of the protected conduct and the adverse action. Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1337 (11th Cir. 1999) (holding seven weeks between the protected activity and the adverse employment action is sufficient to establish the causal relation element of a prima facie case for retaliation). Plaintiff must "adduce evidence sufficient to create an inference" that the adverse employment action was influenced in part by the protected activity. Pennington v. City of Huntsville, 261 F.3d 1262, 1268 (11th Cir. 2001) (emphasis added). Stated differently, a plaintiff must demonstrate "the protected activity and the adverse action were not wholly unrelated." Clover v. Total System Services, 176 F.3d 1346, 1354 (11th Cir. 1999) (emphasis added).

Smith reported the conduct to government agencies April 18, 2011, and met with investigators from the government agencies in late April 2011. Smith requested a transfer soon thereafter; on May 9, 2011, her transfer was complete, and she began work at Bright Horizons' Moffitt Center. Perhaps the most probative evidence in establishing a causal

connection between Smith's protected activity and termination occurred that same day when the Moffitt Center director, Ms. Fuller, informed Smith that she had two strikes against her; one for reporting the child abuse, and one for placing Ms. Fuller in the middle of the investigation. (Doc. # 22, ¶24, Doc. # 27). Smith was terminated six weeks later on June 20, 2011. (Doc. # 24, exhibit 18). Ms. Fuller's statements, analyzed in concert with the close temporal proximity of Smith's termination—approximately six weeks after the statements were made, and within two months of the original protected activity— clearly establish the third and final prong of Smith's prima facie case of retaliation without even addressing Bright Horizons' election to disregard steps in its termination policy.

Norman cooperated with the government authorities investigating the child abuse complaints in late April by providing her recollection of Ms. Turner's treatment of children at the Bright Horizons facility. Shortly after providing this testimony, Ms. Horner called Norman into her office and asked her to repeat the information Norman provided to investigators. (Doc. # 22, ¶42, Doc. # 27). Norman was subsequently required to further recite this information to other supervisors and directors of Bright Horizons. Shortly thereafter, Norman received complaints concerning her "unprofessional and curt" treatment of employees, which increased in frequency after her cooperation with the investigating government agencies. Bright Horizons terminated Norman on June 17, 2011. (Doc. # 22, ¶49, Doc. # 27). Based on the totality of the circumstances, the close temporal proximity between Norman's protected activity and her termination, as well as Bright Horizons' demands that Norman recite her previously-provided testimony and the suspicious escalation of discipline toward Norman, establish the third and final prong of Norman's prima facie case of retaliation.

**D. Bright Horizons Has Provided Legitimate Reasons for both Smith's and Norman's Terminations.**

For purposes of summary judgment, Plaintiffs established individual prima facie cases for retaliation under the FWA, and, therefore, the next step in the analysis is to determine whether Bright Horizons carried its burden to provide a legitimate reason for both Smith's and Norman's terminations. Rutledge, 262 Fed.Appx. at 958. Bright Horizons has satisfied this burden, which is exceedingly light on rebuttal. See Perryman v. Johnson Prods. Co., 698 F.2d 1138, 1142 (11th Cir. 1983).

Bright Horizons documented previous disciplinary issues for Smith on February 28, 2011, March 31, 2011, and April 13, 2011. (Doc. # 22, ¶10; Doc. # 27). On June 14, 2011, Smith was involved in an altercation with a parent over Smith's treatment of a child in the parent's presence. Id. at ¶26; Doc. # 31, ¶23. While Smith disputes the veracity of the parent's claim, on June 20, 2011, Bright Horizons placed Smith on leave, investigated the incident, and ultimately decided in favor of the parent. (Doc. # 31). On June 23, 2011, Bright Horizons terminated Smith, and cited Smith's failure to share the alleged altercation with her supervisor, as well as unacceptable, unprofessional, and insensitive behavior toward parents of children at the facility. (Doc. # 24, exhibit 18). Based on a review of the record, Bright Horizons has proffered legitimate, non-discriminatory reasons for Smith's termination.

Similarly, Bright Horizons documented and counseled Norman for previous inappropriate conduct. On August 18, 2010, Norman "had a verbal outburst with the Assistant Director Ms. Neverson when she asked what was taking her so long to get to the infant room," which Norman signed and acknowledged August 24, 2010. (Doc. # 22,

14

¶39, Doc. # 27).  In April 2011, Norman acknowledged an incident in which she may have exuded unprofessional behavior toward a co-worker.  (Doc. # 25, pp. 57–58).  Further, on May 20, 2011, Norman received a written reprimand for sharing confidential information related to the child abuse investigations that was inappropriate, inflammatory, and disruptive in nature—in direct violation of Bright Horizons' policies.  (Doc. # 22, ¶45, Doc. # 27).  And in early June 2011, Norman acknowledged a verbal confrontation with fellow employees.  (Doc. # 25, p. 95, ¶¶16–20).  On June 17, 2011, Bright Horizons terminated Norman, citing her unprofessional conduct and violations of Bright Horizons' confidentiality policies.  (Doc. # 22, ¶49; Doc. # 25, pp. 114–115).  As with Smith, based on a review of the record, Bright Horizons has proffered legitimate, non-discriminatory reasons for Norman's termination.

### E. Plaintiffs Have Presented Sufficient Evidence to Suggest Bright Horizons' Provided Legitimate Reasons are Pretext for both Terminations.

The remaining inquiry for the Court is whether Bright Horizons' proffered legitimate reasons are pretext for otherwise unlawful termination under the FWA for protected activity.  To establish pretext, a plaintiff must come forward with evidence, including previously produced evidence establishing the prima facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision. Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir.2000). The evidence offered must be "significantly probative" as to the issue of pretext. Mayfield v. Patterson Plumbing Co., 101 F.3d 1371, 1376 (11th Cir.1996). A plaintiff's subjective opinion, "without supportive evidence, is not sufficient to establish pretext." See Carter v. City of Miami, 870 F.2d 578, 585 (11th Cir.1989). A plaintiff cannot succeed in establishing pretext by simply quarreling with the wisdom of

[her] employer's decision. Chapman, 229 F.3d at 1030.  In Chapman, the Eleventh Circuit

Court of Appeals explained:

> Federal Courts do not sit as a super-personnel department
> that reexamines an entity's business decisions. No matter
> how medieval a firm's practice, no matter how high-handed its
> decisional process, no matter how mistaken a firm's
> managers, the ... [law] does not interfere. Rather, our inquiry
> is limited to whether the employer gave an honest explanation
> of its behavior.... [A]n employer may fire an employee for a
> good reason, a bad reason, a reason based on erroneous
> facts, or for no reason at all, as long as its action is not for a
> retaliatory reason.

Id. at 1030.

For purposes of summary judgment, the Court finds Plaintiffs have presented

sufficient evidence upon which a jury may find Bright Horizons' legitimate reasons are

pretext for both terminations.  As previously discussed in section (1)(C), supra, Bright

Horizons' Moffit Center director Ms. Fuller informed Smith she had two strikes against her

for reporting the alleged child abuse and involving Ms. Fuller in the government

investigations. (Doc. # 22, ¶24, Doc. # 27).  A plaintiff may rely on evidence she produced

to establish her prima facie case.  Martin v. Brevard County Public Schools, 543 F.3d

1261, 1268 (11th Cir. 2008).  In addition to Ms. Fuller's statement, Bright Horizons failed

to adhere to its disciplinary policy and in some instances could not produce proper

documentation to corroborate prior alleged reprimands, whether written or verbal.  (Doc.

# 39, pp. 38–40).  Based on the foregoing, and evidence presented during her prima facie

case, Smith has cast sufficient doubt on Bright Horizons' proffered reason to permit a

reasonable fact finder to conclude that Bright Horizons' reasons were not the real

motivation for her termination. See Conner v. Lafarge North America, Inc., 343 Fed.Appx.

537, 541 (11th Cir. 2009).

As with Smith, Norman similarly experienced increased scrutiny shortly after providing information to the government agencies investigating the child abuse.  On at least three occasions, Norman was called into directors' offices to recite the information she provided to authorities concerning Ms. Turner's alleged child abuse of children at the facility.  (Doc. # 22, ¶42, Doc. # 27).  Within days of continually reciting this information to her supervisors, Norman received a written reprimand for allegedly violating a confidentiality policy. Id. at ¶45. From that reprimand to her termination, Norman testified she was treated differently and with greater scrutiny than she experienced prior to providing the information to the agencies.  (Doc. # 25, pp. 89–90). Ms. Hayes, Whitley, and Kozy participated in the decision to terminate Norman; however, all three provided inconsistent bases for Norman's termination.  Ms. Hayes testified Norman was terminated based on her poor performance and confrontations, (Doc. # 33, p. 46), and Ms. Kozy testified Norman was terminated for sharing confidential information.  (Doc. # 40, pp. 49–50).  And while the statement was not made directly to Norman, Ms. Fuller's "two strike" statement to Smith serves as further circumstantial evidence in the totality of the circumstances to suggest pretext for Norman's termination.  Norman has similarly cast sufficient doubt on Bright Horizons' proffered reasons to permit a reasonable fact finder to conclude that Bright Horizons' reasons were not the real motivation for her termination.

### 2. Child Abuse Statute Retaliation

Florida Statute § 39.203(1)(a) proscribes immunity from civil liability for any person, official, or institution that reports in good faith "any instance of child abuse, abandonment, or neglect to the department or any law enforcement agency."  Florida Statute § 39.203(2)(a) guarantees that "no employee of a facility serving children may be subjected

CASE NO. 8:12-CV-1301-T-17TBM

to reprisal or discharge" for reporting abuse, abandonment, or neglect.   And <u>Florida</u> <u>Statute</u> § 39.203(2)(b) grants a civil cause of action for retaliation—the "detrimental changes in the employment status of [a] reporting party by reason of his or her making such a report."  Such a detrimental change—namely termination, negative evaluations, or reduction in work privileges—creates a rebuttable presumption of retaliation.  <u>Id.</u>  The Court adopts the reasoning preceding this section and rules as a matter of law that the terminations and negative evaluations discussed, <u>supra</u> (1)(B)–(D), create such a rebuttable presumption which Bright Horizons has failed to overcome.

Accordingly, it is **ORDERED** that:

1) Defendant's Motion for Summary Judgment is **GRANTED** with respect to Plaintiffs' causes of action under <u>Florida</u> <u>Statutes</u> §§ 448.102(1) and 448.102(3);

2) Defendant's Motion for Summary Judgment is **DENIED** with respect to Plaintiffs' causes of action under <u>Florida</u> <u>Statute</u> § 448.102(2).

3) Defendant's Motion for Summary Judgment is **DENIED** with respect to Plaintiffs' causes of action under <u>Florida</u> <u>Statute</u> 39.203(2)(b).

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this _____ day of January, 2014.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:   All Counsel and Parties of Record